IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MARY PURVIS s/p/a                                                    PLAINTIFF
MARY HODGE

VS.                                        CIVIL ACTION NO. 3:14cv290-CWR-FKB

CAROLYN W. COLVIN, COMMISSIONER                          DEFENDANT
OF SOCIAL SECURITY ADMINISTRATION

_____

REPORT AND RECOMMENDATION

This cause is before the Court regarding the appeal by Mary Purvis s/p/a Mary Hodge of

the Commissioner of Social Security's final decision denying Purvis's request for Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1382c(a)(3).  In

rendering this Report and Recommendation, the Court has carefully reviewed the Administrative

Record [9] regarding Purvis's claims (including the administrative decision, the medical records

and a transcript of the hearing before the Administrative Law Judge ("ALJ")), Plaintiff's Motion

for Summary Judgment [10] and supporting Memorandum [11], Defendant's Motion for an

Order Affirming the Commissioner's Decision [12] and supporting memorandum [13], and

Plaintiff's Rebuttal Brief [14].

For the reasons discussed in this Report and Recommendation, the Court finds that the

Commissioner's decision is supported by substantial evidence and hereby recommends that the

decision be upheld.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff Purvis, age 53 at the time of the hearing decision, appeals the Social Security

Administration's denial of benefits.  On September 23, 2010, Purvis filed an application for

supplemental security income, alleging disability beginning March 1, 2004. [9] at 12.[1]
Plaintiff alleges that she is unable to work due to leg, back, and eye problems.  *Id.* at 103.  Both
her initial claim and her Request for Reconsideration were denied.  *Id.* at 60, 66.

The ALJ held a hearing on January 23, 2013, during which Purvis was represented by
counsel.  *Id.* at 26, 28. According to her hearing testimony, Purvis finished the ninth grade, but
never obtained a G.E.D.  *Id.* at 30-31.  She testified that she last worked part-time in 2004 as a
cook for an elderly person.  *Id.* at 34.

The ALJ issued an unfavorable decision on February 4, 2013.  *Id.* at 12-21.  The Appeals
Council denied Purvis's request for review of the ALJ's decision on February 19, 2014, and this
appeal followed.  *Id.* at 1.

In the ALJ's February 2013 decision, she worked through the familiar sequential
evaluation process for determining disability.[2]   The ALJ found that Purvis had not engaged in

---

[1]Citations reflect the original pagination of the administrative record.

[2]In evaluating a disability claim, the ALJ is to engage in a five-step sequential process,
making the following determinations:

(1)     whether the claimant is presently engaging in substantial gainful activity (if so, a
        finding of "not disabled" is made);

(2)     whether the claimant has a severe impairment (if not, a finding of "not disabled"
        is made);

(3)     whether the impairment is listed, or equivalent to an impairment listed, in 20
        C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be
        disabled);

(4)     whether the impairment prevents the claimant from doing past relevant work (if
        not, the claimant is found to be not disabled); and

(5)     whether the impairment prevents the claimant from performing any other

substantial gainful activity since September 23, 2010, the application date.  *Id.* at 14.  The ALJ

concluded that Purvis has the severe impairments of  "obesity, glaucoma, degenerative disc

disease of the cervical spine, mood disorder, carpal tunnel syndrome and osteoarthritis of the

hands."  *Id.*  The ALJ also found that Plaintiff's alleged impairments of back pain, gout, and

knee pain were "nonsevere."  *Id.* at 14-15. Further, the ALJ found that Purvis did not have an

impairment or combination of impairments of Listing severity.  *Id.* at 15.  Considering the

record, the ALJ determined that Purvis has the "residual functional capacity to perform light

work as defined in 20 CFR 416.967(b) with the following additional limitations: may only

occasionally bend, squat, or kneel; must not be required to perform constant repetitive motions

with her hands; and may perform only routine, repetitive tasks involving only basic interaction

with others."  *Id.* at 16.  With that in mind, and after consulting a vocational expert, the ALJ

concluded that Purvis would be able to perform the requirements of cleaner, fast food worker,

and small parts assembler.  *Id.* at 20-21.  Each of these jobs is light in exertional demand and

unskilled with a specific vocational preparation level of 2.  *Id.*  Accordingly, the ALJ found that

Purvis was not disabled from September 23, 2010, the date of her application, through the date of

the decision, February 4, 2013.  *Id.* at 21.

## II.  MEDICAL HISTORY

The Court has determined that a detailed recitation of the medical records is not

---

substantial gainful activity (if so, the claimant is found to be disabled).

See 20 C.F.R. §§ 404.1520, 416.920.  The analysis ends at the point at which a finding of disability or non-disability is required.  The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

necessary because the parties summarized Purvis's records in their briefs, and the ALJ provided a thorough summary of the records in her decision.

Nevertheless, some of the medical records should be noted.  Plaintiff sought treatment at the Howard Clark Clinic in Morton, Mississippi, a number of times from 2008 to 2011 for various ailments.  *Id.* at 311-339 (Exhibit 17F).  The notes show that several different nurses and nurse practitioners examined and treated Purvis for gouty arthritis, obesity, hypertension, dyslipidemia (high cholesterol), problems with urination, dyspnea (shortness of breath), and a variety of non-chronic issues.  In addition, notes from 2011 and 2012 demonstrate treatment at the Clark Clinic for Purvis's periodic complaints of pain in her neck, back, both knees, and right hip; numbness in her right hand, *id.* at 437; as well as temporary ailments such as colds and a case of shingles.  *Id.* at 380-464 (Exhibit 21F).  The Court observes that Dr. Clark's signature rarely appears on the treatment notes.  During this time period, Purvis's weight hovered around three hundred ten pounds.  According to those records, Plaintiff stands five feet, five inches tall. *Id.* at 315.

On June 14, 2011, Dr. Howard Clark also completed a form entitled "Medical Opinion Re: Ability to do Work-Related Activities (Physical)."  *Id.* at 306-10.  Dr. Clark stated that Purvis's maximum ability to lift and carry on an occasional basis was less than ten pounds, and that her maximum ability to lift and carry on a frequent basis is less than ten pounds.  *Id.* at 306. The doctor opined that Purvis's maximum ability to stand and walk with normal breaks during an eight-hour day would be less than two hours, and that her maximum ability to sit with normal breaks during an eight-hour day would be less than two hours.  *Id.*  Dr. Clark estimated that Purvis could sit for fifteen minutes before changing position, stand for zero minutes before

changing position, must walk around every five minutes, must walk two minutes each time, and needs the opportunity to shift at will from sitting or standing/walking. *Id.* at 307. The doctor also estimated that Purvis will sometimes need to lie down at unpredictable intervals during a work shift. *Id.* Dr. Clark stated that the medical findings that support these limitations are Purvis's arthritis, "obesity – 314#," hypertension, and "[illegible] disc." *Id.*

With regard to postural activities, Dr. Clark stated that Purvis should never twist, stoop, crouch, climb stairs, or climb ladders. *Id.* at 308. Dr. Clark found that the following physical functions are affected by her impairment: reaching (including overhead), handling (gross manipulation), fingering (fine manipulation), feeling, and pushing/pulling. *Id.* Dr. Clark concluded that these physical functions are affected because she is "unable to do" them due to neuropathy, obesity, and arthritis. *Id.* He stated that the medical findings that support this are "arthritis, neuropathy, 314 # = obesity." *Id.*

Dr. Clark found that Purvis has certain environmental restrictions. *Id.* at 309. He found Purvis should avoid concentrated exposure to extreme cold and wetness. *Id.* Likewise, he determined that Purvis should avoid even moderate exposure to extreme heat, humidity, noise, and fumes, odors, dusts, gases, poor ventilation, etc. *Id.* Finally, he found that Purvis should avoid all exposure to hazards, such as machinery, heights, etc. *Id.*

When asked by the form to describe how these environmental factors impair activities and to explain what medical findings support these limitations, Dr. Clark simply replied, "unable to do." *Id.* at 309. Finally, the doctor concluded that Purvis's impairments or treatments would cause her to be absent from work greater than three times a month. *Id.* at 310.

In contrast, a Disability Determination Services physician, Dr. Glenn James, reviewed

Purvis's records on March 29, 2011, and painted a different picture of Purvis's limitations. *Id.* at 296-303.  Dr. James found that she could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, and stand and/or walk about six hours in an eight-hour day. *Id.* at 297.  Dr. James determined that Purvis could sit about six hours in an eight-hour workday, and she had no limitations, other than as shown for lift and/or carry, with regard to her ability to push and/or pull. *Id.*  Dr. James failed to explain how, why, or what evidence supported his conclusions regarding exertional limitations. *Id.*  He further found no postural limitations, no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations. *Id.* at 298-300.

Dr. Parvesh K. Goel examined Purvis on December 6, 2010. *Id.* at 248-250.  He found that Purvis had a full range of motion in her neck, despite previous cervical spine fusion surgery. *Id.* at 249.  He also found that she had "1+ edema of the feet." *Id.*  The doctor noted that Purvis's range of motion of both "upper extremity joints is full but there is evidence of osteoarthritis in the small joints of the hands." *Id.*  He observed that she had "crepitus and painful knee joints bilaterally," but noted no effusion, and found that she had a full range of motion in both knees, with "more painful range of motion on the right than the left." *Id.*  Dr. Goel observed that Purvis had a full range of motion in her back, and that she had a normal gait, but she could not do heel-to-toe walking or squat because of obesity. *Id.*  With regard to her neurological evaluation, the doctor found that her power in her hands was "5/5," her sensation was normal, her grip was normal, her Romberg was negative, her straight leg raising was negative, and her fine and gross manipulation was normal. *Id.*  Dr. Goel's impression was that Purvis is legally blind with glaucoma; has osteoarthritis of the bilateral knees; has hypertension;

has depression and anxiety; has shortness of breath, possibly chronic bronchitis with congestive

heart failure; gastroesophageal reflux disease; and obesity.  *Id.* at 250.

## III. STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to

support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and

whether the correct legal standards were applied.  42 U.S.C. § 405(g) (2006); *accord Falco v.*

*Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and
> is: "such relevant evidence as a reasonable mind might accept to support a
> conclusion. It must do more than create a suspicion of the existence of the fact to
> be established, but 'no substantial evidence' will be found only where there is a
> 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"

*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988)(quoting *Hames v. Heckler*, 707 F.2d 162,

164 (5th Cir. 1983)). In applying the substantial evidence standard, the Court must carefully

examine the entire record, but must refrain from re-weighing the evidence or substituting its

judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Conflicts in the evidence and credibility assessments are for the Commissioner and not for the

courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the

Commissioner's decision is supported by the evidence, and the proper legal standards were

applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d

208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

Finally, pursuant to 42 U.S.C. § 405(b)(1), an ALJ is "required to discuss the evidence

offered in support of [the claimant's] claim for disability and to explain why she found [the

claimant] not to be disabled" at a particular step. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir.

2007). The ALJ is "not always required to do an exhaustive point-by-point discussion." *Id*.

But when the ALJ offers nothing to support her conclusion, "a reviewing court[] simply cannot

tell whether her decision is based on substantial evidence or not." *Id*. (citing *Cook v. Heckler*,

783 F.2d 1168, 1172 (4th Cir. 1986)).  Finally, "[a] reviewing court may not, however, examine

only the evidence favorable to the Commissioner; it must also examine contrary evidence."

*Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005).

IV. DISCUSSION OF THE ALLEGED ERRORS
AND APPLICABLE LAW

Plaintiff raises issues for consideration, quoted as follows:

1.  The ALJ failed to give due consideration to medical opinion evidence

provided by Claimant's primary treating physician.

2.  The ALJ relied upon the opinions of a non-examining physician regarding

impairment severity when those opinions were not based upon review of the

entire record.

3.  The ALJ employed an incorrect standard of "severe" at Step 2 of the sequential

process and claimant was prejudiced thereby.

The Court now turns to these alleged errors.

A.  Did the ALJ fail to give due consideration to medical opinion

evidence provided by Claimant's primary treating physician?

Plaintiff argues that the ALJ failed to give proper consideration to the medical opinion

evidence of Dr. Howard Clark, her primary treating physician.  As discussed in Section II, *supra*,

Dr. Clark provided a medical opinion concluding that Purvis's abilities to do work-related

-8-

activities were extremely limited.  Purvis argues that the range of treatment Dr. Clark has given her since 2008 puts him in the best position to provide a longitudinal picture of her medical conditions and impairments, and that the ALJ erred when she gave Dr. Clark's opinion "no significant weight."  On the other hand, Plaintiff argues that the ALJ erred when she placed "great weight" on the opinion of Dr. Glenn James, a Disability Determination Services doctor who did not examine Purvis, but who reviewed the records and concluded that Purvis could perform light work activity.

The Commissioner argues that the ALJ properly considered all of the medical evidence of record, including Plaintiff's testimony, Dr. Clark's opinion, and other doctors' findings and opinions, to determine that plaintiff was capable of performing a range of light work.

The Fifth Circuit has held that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability."  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  However, the treating physician's opinions are far from conclusive because the ALJ has the sole responsibility for determining disability status. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).  "Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony.  The good cause exceptions [the court] has recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.*  In other words, the ALJ "'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'" *Id.* (quoting *Scott v. Heckler*, 770 F.2d at 485).

In this case, the ALJ attributed "no significant weight" to Dr. Clark's opinion because his treating notes did not "support such extreme limitations," and his notes reference some neck pain, but mainly address Plaintiff's urinary problems.  Finally, the ALJ stated that Dr. Clark did not appear to base his opinion on any laboratory tests, and there was "certainly no evidence that the claimant cannot stand for even one minute," as Dr. Clark stated in his report. [9] at 18.

Indeed, Dr. Clark's opinion is given in a form with brief or little explanation for the basis of the doctor's opinion, and without discussion of laboratory or testing to support the doctor's conclusion.  Further, Dr. Clark's signature as the examining clinician appears only twice in the lengthy records; in all other instances, nurses or nurse practitioners were listed as the examining clinicians. Thus, although the ALJ did not discuss at length her reasons to give Dr. Clark's opinion "no significant weight," the ALJ met the good cause standard in that she pointed out inconsistencies with other medical opinions, the lack of support by laboratory tests, and the lack of support in the record for his conclusions.  Accordingly, this issue does not provide a basis for remand.

B.  Did the ALJ rely upon the opinions of a non-examining physician regarding impairment severity when those opinions were not based upon review of the entire record?

Plaintiff also argues that the ALJ relied too heavily on the opinion of Dr. James, a Disability Determination Services doctor, who did not have the most recent records before him when he made his assessment in March 2011.  While the ALJ placed "great weight" on the opinion of Dr. James, a non-examining doctor, the ALJ had the more recent records at her disposal when she made her decision, and the ALJ's discussion demonstrates that she considered all of the records in reaching her decision.  "[T]he ALJ has the sole responsibility for

determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990); *see also Taylor v. Astrue*, 706 F.3d 600, 602-603 (5th Cir. 2012). Therefore, substantial evidence exists in the record to support the ALJ's decision on this issue, and this argument does not provide a basis for reversal or remand.

C.  Did the ALJ employ an incorrect standard of "severe" at

Step 2 of the sequential process and thereby prejudice Plaintiff?

Plaintiff argues that the ALJ used an incorrect standard for "severe" in her opinion, therefore the decision must be reversed. In this case, the ALJ found that Purvis has the severe impairments of obesity, glaucoma, degenerative disc disease of the cervical spine, mood disorder, carpal tunnel syndrome, and osteoarthritis of the hands. [9] at 14.  In contrast, the ALJ characterized Plaintiff's gout and back pain caused by degenerative disc disease of the lumbar spine as non-severe.

Turning to the ALJ's decision, she stated the definitions, as follows:

> An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.

*Id.* at 13.  Later in the opinion, when specifically discussing Purvis's back pain and gout, the ALJ stated that "[a]n impairment is 'not severe' if it has no more than a minimal effect on the claimant's ability to work, irrespective of his age, education or work history. *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)."  *Id.* at 14. The ALJ went on to conclude that "claimant's degenerative disc disease of the lumbar spine and gout fail to produce more than a minimal effect on her ability to perform basic work activities."  *Id.*

The severity standard in this circuit was established in the case of *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). In *Stone*, the Fifth Circuit considered the regulation that defines a severe impairment as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), and held that this definition was inconsistent with the Social Security Act. The court stated the correct severity standard as follows:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Stone*, 752 F.2d at 1101. Moreover, the court stated that in the future, it would assume that the ALJ had applied an incorrect standard "unless the correct standard is set forth by reference to [the *Stone* opinion] or another of the same effect, or by an express statement that the construction [given by the *Stone* court] to 20 C.F.R. § 404.1520(c) is used." *Id.* at 1106.

Purvis argues that remand is required because the ALJ failed to apply the *Stone* standard, and she thereby suffered prejudice. She contends that had the proper language been employed, her gout and back pain would have been found severe and, therefore, would have impacted the formulation of her residual functional capacity ("RFC"). Thus, this language raises the issue of whether this "minimal effect" standard is equivalent to, or at least consistent with, the *Stone* standard.

The present confusion concerning the appropriate standard originates in post-*Stone* Social Security Administration rulings. After *Stone*, the regulations regarding severity remained essentially the same. However, the Administration responded to *Stone* and its standard by issuing a ruling attempting to clarify its policy for the determination of severity. In the ruling, the Administration stated that an impairment would be considered non-severe if it was a slight

-12-

abnormality having only a minimal effect on the ability to work.  SSR 85-28, 1985 WL 56856, at

*3 (S.S.A. 1985).  A subsequent ruling used this same "minimal effect" language.  *See* SSR 96-

3p, 1996 WL 374181, at *1 (S.S.A. 1996)   Thus, as one court has observed, it appears that the

Administration views this minimal limitation standard as consistent with the *Stone* standard.  *See*

*Acosta v. Astrue*, 865 F. Supp. 2d 767, 779-82 (W.D. Tex. 2012).  Not surprisingly, ALJs often

cite to this regulation or quote its language.

　　　Adding to the confusion in this circuit is the fact that the Fifth Circuit has occasionally

used this language in its opinions.  *See*, *e.g.*, *Loza v. Apfel*, 219 F.3d 378, 399 (5th Cir. 2000)

(directing that on remand, the ALJ is to determine whether claimant's mental impairments were

merely "a slight abnormality of minimal effect on ability to work"); *Brunson v. Astrue*, 387 Fed.

App'x 459, 461 (5th Cir. 2010) (unpublished decision) (per curiam) (stating that an impairment

is not severe if it has no more than a minimal effect on ability to do basic work activities).  As a

result, some district courts in this circuit have concluded that the minimal limitation standard is

equivalent to the *Stone* standard.  *E.g.*, *Acosta v. Astrue*, 865 F. Supp. 2d 767, 782-83 (W.D. Tex.

2012).   Other courts, however, have reached the opposite conclusion.  *E.g., Padalecki v. Astrue*,

688 F. Supp. 2d 576, 580-81 (W.D. Tex. 2010).

　　　The language of *Stone*, however, is clear:  It allows for a minimal effect *on the individual*

but makes *no* allowance for a minimal interference *with the ability to work.*  While the Fifth

Circuit has occasionally referred to "minimal effect" on the ability to work, it has never

specifically addressed the issue of whether this standard is consistent with *Stone.*  The

undersigned believes that unless and until the Fifth Circuit holds that a severity analysis may

properly allow for a minimal effect on an individual's ability to work, the better course is to

-13-

apply *Stone* to require that a medically-determinable impairment having any effect on the ability to work be characterized as severe.  Under this interpretation of the correct standard, the ALJ's citation in the present case to the minimal effect standard was erroneous.

However, failure to cite to the correct standard does not necessarily mandate reversal. *Stone* created only a presumption, and where the ALJ's written decision otherwise indicates that the ALJ applied the correct standard, or where the substantial rights of the plaintiff are not affected, the failure of the ALJ to cite to *Stone* or track its precise language does not require remand.  *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012); *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986); *see also LeBlanc v. Chater*, 83  F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996) (unpublished table decision) (per curiam).  In the portion of the her decision in which she analyzed the severity of Plaintiff's lumbar back pain and gout, the ALJ pointed out that the medical record did not support Purvis's allegations that these conditions were severe.

The finding that Purvis's lumbar back pain and gout are non-severe is supported by substantial evidence in the medical record.  *See Taylor*, 706 F.3d at 603.  The ALJ highlighted that a July 2012 MRI of her lumbar spine showed only a "**tiny** parasaggital bulging disc at L2-3," and "straight leg tests were negative." [9] at 14 (emphasis in original).  With regard to her gout, the record shows that she was being treated with medication for the condition, and the ALJ emphasized that her treating records showed very few flare-ups, contrary to her testimony that she experienced flare-ups once a month, each lasting from two to four weeks.  *Id.*  Thus, the only indications in the record of limitations caused by these conditions consist of Purvis's own subjective complaints and testimony. The Court is mindful that the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who had an opportunity to observe whether he or she seemed to be disabled.  *Harrell v. Bowen*, 862 F.2d

471, 480 (5th Cir. 1988).  The ALJ properly considered these and determined that they were lacking in credibility and were inconsistent with the objective medical evidence.  As the ALJ considered Purvis's complaints of pain along with her activities and the medical evidence, the undersigned finds that the record contains substantial evidence to support the ALJ's decision and must give considerable deference to the ALJ's evaluation of the plaintiff's credibility and severity of limitations. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).  In other words, because Plaintiff has failed to show that she is "so functionally impaired by [her gout and lumbar back pain that she] is precluded from engaging in substantial gainful activity . . . . any error by the ALJ in not following the procedures set out in *Stone* is harmless."  *Taylor*, 706 F.3d at 603.

## V. CONCLUSION

In sum, the undersigned finds that the ALJ correctly analyzed the applicable law, that substantial evidence supports her decision, and that no reversible error exists.  Accordingly, the undersigned recommends that the Motion for an Order Affirming the Commissioner's Decision [12] be granted, and the Motion for Summary Judgment filed by Plaintiff [10] be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

RESPECTFULLY SUBMITTED, this the 27th day of July, 2015.

 /s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE

-15-